UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| NORMAN E. DICKINSON, | ) |
| Petitioner | ) ) ) |
| v. | )  Civil No. 06-47-P-S |
| STATE OF MAINE, | ) ) ) |
| Respondent | ) ) |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Norman Dickinson has filed 28 U.S.C. § 2254 petition containing two grounds that challenge the conditions of probation set by the state courts when he was sentenced for assaulting a police officer. The State of Maine has filed a motion to dismiss. (Docket No. 6.) I recommend that the Court grant the motion to dismiss and deny Dickinson § 2254 relief.

### *Discussion*

As a preliminary matter, there is no dispute that Dickinson raised the same two grounds he raises here in the state post-conviction proceedings, although the State does argue that Dickinson did not adequately present the Fourteenth Amendment due process challenge of Ground Two to the Maine Law Court and, thus, did not fully exhaust this claim.

*Ground One*

The first § 2254 ground listed by Dickinson is that the challenged conditions of probation are illegal. (Sec. 2254 Pet. at 5.) He contends that these conditions are not reasonably related to his crime of conviction. (Id.) He explains that he pled guilty to assaulting a corrections officer at the Cumberland County Jail after the officer, doing medical rounds, had opened the cell door and pushed Dickinson. (Pet'r Mem. at 1.) With respect to the special conditions of probation, Dickinson challenges the following conditions: 1. Dickinson must have no contact direct or indirect with Cynthia Neal, Helen Chase, Wendi Sue Muther, or their families; 2. Dickinson must remain at his residence at all times unless his probation officer or the officer's designee approves of a change of location; 3. Dickinson must not possess counterfeit or toy weapons; 4. Dickenson must not use or possess sexually explicit materials; and 5. Dickinson may not use or possess a computer with internet access. (Id. at 1.) Dickinson asserts that under Maine law, in particular State v. Nolan, 2000 ME 165, 759 A.2d 721, the conditions of probation must be reasonably related to the crime(s) of conviction. (Pet'r Mem. at 2.) He contends that the no contact and no fake weapons conditions have no nexus to the assault on the officer but relate to a prior probation that was terminated at the time of the sentence at issue. (Id.) He believes that all the conditions are outgrowths of his crimes and behavior prior to the assault. (Id.)

In State v. Nolan the Maine Law Court explained

> A court's power to impose conditions of probation is governed by 17-A M.R.S.A. § 1204 (1983 & Supp.1999).Probation is a device designed to assist individuals in reintegrating into society, and may be premised on reasonable conditions that are tailored to a particular probationer's needs. State v. Smith, 573 A.2d 384, 386 (Me.1990). The sentencing court may impose restrictions on the probationer's liberty that

> furthers the rehabilitation process by prohibiting conduct deemed to impose the reintegration of the probationer into normal society. [State v.]Coreau, 651 A.2d [319,] 321 [(Me. 1994)]. Probation conditions must, however, (1) be reasonably related to the crimes for which the probationer has been convicted; (2) further the rehabilitation process by reducing the risk of the probationer committing similar crimes again; or (3) protect the public safety. Id.

2000 ME 165, ¶ 9, 759 A.2d at 723 -24 (footnote omitted).

This Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). In responding to the States argument that this ground identifies only a violation of state law, Dickinson argues that he should be allowed to raise any ground that he raised in his state post-conviction proceeding in the federal courts. (Pet'r Resp. at 1.) He also asserts that he "is not alleging a violation of any state law only that his conditions of probation are illegal because they violate the Law Court[']s mandate in State v. Nolan, 759 A.2d 721, 724 [Me. 200] which requires conditions of probation to be 'reasonably related to the crimes for which the probationer has been convicted.'" (Id.) What Dickinson fails to comprehend is that Nolan is the Law Court's interpretation of the state statute 17-A M.R.S.A. § 1204; both the statute and the Law Court's precedent regarding that statute are state, and not federal statutory or constitutional, law. Accordingly, Ground One is not a cognizable 28 U.S.C. § 2254 ground for relief.

*Ground Two*

Ground Two in this § 2254 petition is Dickinson's discontent with the disconnectedness of his conditions of probation to the crime of conviction dressed as a

3

claim brought under the due process clause of the United States Constitution. (Pet'r Mem. at 2.) Dickinson argues that these conditions restrict his liberty and are overly broad as they were imposed without a compelling state interest. (Id. at 2-3; Sec. 2254 Pet. at 5.)

As indicated above, the State concedes that Dickinson raised this challenge in the state post-conviction proceeding. However, the State argues that Dickinson did not raise this challenge in his memorandum of law in support of his request for a certificate of probable cause seeking the Law Court's discretionary review of the denial of post-conviction relief.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that [] the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," the Supreme Court explained in O'Sullivan v. Boerckel, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. 838, 845 (1999). In the State of Maine this means that the petitioner

4

must present his challenges to the post-conviction determination to the Maine Law Court inviting the Law Court's discretionary review.

The First Circuit has recently explored the parameters of adequate presentation in the 28 U.S.C. § 2254 context in Goodrich v. Hall:

> This circuit's rules about what constitutes presenting a federal issue are fairly generous. See [Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir.2002)] (stating that "a petitioner need not express his federal claims in precisely the same terms in both the state and federal courts"). We have said that the "ways in which a petitioner might satisfy his or her obligation to fairly present a federal constitutional issue to a state's highest court" are "myriad," and we have listed examples, such as "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution." Id. at 52 (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir.1987)). The exhaustion requirement can also be satisfied where "[a]n individual's claim, arising under and asserted in terms of state law, ⋯ as a practical matter, [is] indistinguishable from one arising under federal law." Id. (internal quotation marks omitted) (quoting Nadworny v. Fair, 872 F.2d 1093, 1099 (1st Cir .1989)).

__ F.3d __, __, 2006 WL 1350325, *2 (1st Cir. May 18, 2006).

In his memorandum in support of his request for a certificate of probable cause, Dickinson, through counsel, opined: "In this post-conviction review matter, Petitioner challenged the legality and constitutionality of several conditions of probation imposed on April 4, 2002, as part of his sentence for Assault on a Law Enforcement Officer – Class C." (Appellant Mem. at 1, State Ex. D.) However, in framing the challenge that Dickinson wanted the Law Court to review, counsel set forth a single ground: "The challenged conditions of probation are illegal because they are not reasonably related to the offense for which petitioner was sentenced." (Id. at 3.) In the three paragraphs explicating this challenge counsel nowhere mentions any constitutional standards and

5

instead focuses singularly on the Law Court's State v. Coreau, 651 A.2d 319 (Me. 1994) (see Appellant Mem. at 3-4), a decision which tightly tethers its analysis to 17-A M.R.S.A. § 1204 and which is the case relied on in Nolan.[1]

In responding to the State's argument that Dickinson did not adequately present the constitutional challenge to the Maine Law Court – acknowledging that he "may not have mentioned the constitutional challenge to the conditions of probation in his request for a certificate of probable cause" -- Dickinson asserts that the Law Court would have had the entire post-conviction record in front of it, including the post-conviction memorandum and the transcript of the December 3, 2004, post-conviction hearing during which this challenge was aired. (Pet'r Resp. at 1.)[2]

However, the fact that Dickinson in an earlier proceeding had pressed such a claim does not apprise the Law Court of his intention to continue to press it in seeking discretionary review. See Needel v. Scafati, 412 F.2d 761, 765 (1969) ("While with hindsight one can find in the state court record seeds of the argument, so vigorously urged in the federal court ... the seeds never came to visible fruition."). Dickinson's memorandum to the Law Court expressly acknowledged that he had raised both state law and constitutional claims in the post-conviction court but then proceeded only to raise the singular state-law ground in seeking discretionary review. This deliberate weeding of

---

[1] Dickinson had previously sought the Law Court's review of this sentence in an application to allow an appeal of his sentence. In that pleading he argued that the judge did not complete a proper Hewey analysis (a reference to a Law Court sentencing decision); that the judge treated him inappropriately with his comment about Dickinson "jerking off"; and that the special condition of "no pornography" is not appropriate in light of the report of Steve Thomas. (Application Allow Appeal at 1, State Ex. B.) This pleading in no way advances Dickinson's claim that he has fully exhausted his second § 2254 due process ground.

[2] Dickinson also complains that the post-conviction court never even ruled on the constitutional claim. (Id. at 2.) This silence (and even a similar silence by the Law Court had Dickinson raised the claim in his efforts to get its discretionary review) does not undermine Dickinson's claim to complete exhaustion. See Dye v. Hofbauer, __ U.S. __, __, 126 S.Ct. 5, 6-7 (2005).

claims distinguishes this case from Goodrich. In Goodrich the First Circuit explored the "close" question of exhaustion as follows:

> In his brief before the state Appeals Court, Goodrich expressly relied on the Fourteenth Amendment to the United States Constitution, explicitly invoked its Due Process Clause, and cited to apposite federal cases, including United States v. Basurto, 497 F.2d 781 (9th Cir.1974). What makes this question of exhaustion close is that the only decisions cited in Goodrich's ALOFAR are state decisions. However, Goodrich primarily relied in the ALOFAR on a state case invoking federal due process as to an alleged error in the grand jury proceedings. See Commonwealth v. Kelcourse, 535 N.E.2d 1272, 1273 (Mass.1989) (defendant argued that prosecutor's statement to grand jury violated, inter alia, "his Fourteenth Amendment right to due process" (citing Hicks v. Oklahoma, 447 U.S. 343, 345-47 (1980)). Furthermore, Goodrich's ALOFAR did explicitly frame both his "Statement of Points with Respect to Which Further Appellate Review is Sought" and his "Statement of Argument" in terms of a violation of "Amendment XIV," by which he appears to have meant the Fourteenth Amendment to the United States Constitution (and also in terms of a violation of a state constitutional provision).
>     Taking into account the background of Goodrich's more explicit federal argument before the state Appeals Court, the absence of any sign that Goodrich abandoned his federal claim in the ALOFAR, and the nature of the argument in the ALOFAR (which is strikingly similar to, and indeed largely a verbatim copy of, the Appeals Court brief), see Barresi, 296 F.3d at 52 n. 1 ("If it cannot be said that the petitioner abandoned his or her federal claims on appeal to the SJC, federal exhaustion review includes consideration of the petitioner's lower court filings as a 'backdrop' to his or her ALOFAR."), we think it likely "a reasonable jurist would recognize the [federal] constitutional dimensions of the petitioner's claims." Id. at 52.

__ F.3d __, __, 2006 WL 1350325, *2-3 (emphasis added).   Dickinson's express abandonment of his due process claim also distinguishes his case from instances in which petitioner places all his post-conviction grounds in front of the State court of last resort without further briefing, see Galdamez v. Keane, 394 F.3d 68, 75-77 (2d Cir. 2005) (concluding that there was adequate exhaustion when the § 2254 petitioner had "enclosed

7

a copy of the Appellate Division's decision affirming the conviction, and stated that '[t]he appellant hereby requests leave to appeal to this Court'").[3]

In view of the above, I conclude that Dickinson has failed to fully exhaust his ground that his due process rights under the United States Constitution were violated when the state court imposed the five conditions of release that Dickinson finds so objectionable. See 28 U.S.C. § 2254(b)(1)(A); Baldwin, 541 U.S. at 29.

## *Conclusion*

For the reasons set forth above, I recommend that the Court **GRANT** the motion to dismiss (Docket No. 6) and **DENY** Dickinson 28 U.S.C. § 2254 relief.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 30, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

---

[3] This is also not an example of a circumstance in which the claim articulated to the state court is such a mirror image of the constitutional challenge that the failure to expressly name and/or explain the federal overlay might not be fatal to a petitioner's exhaustion argument. See Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005) ("[W]e hold that [the § 2255 petitioner] exhausted his federal claim because, in this case, the legal standards for his federal and state claims were so similar that by presenting his state claim, he also presented his federal claim.").